Grant v Temple (2023 NY Slip Op 02732)

Grant v Temple

2023 NY Slip Op 02732

Decided on May 18, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 18, 2023

CV-22-1964
[*1]Brandon Grant, Individually and as Parent and Guardian of Brandon Grant Jr., an Infant, Respondent,
v
Shawn Temple et al., Defendants, and County of Ulster, Appellant.

Calendar Date:March 27, 2023

Before:Clark, J.P., Aarons, Pritzker and McShan, JJ.

Cook, Netter, Cloonan, Kurtz & Murphy, PC, Kingston (Eric M. Kurtz of counsel), for appellant.
Mainetti & Mainetti, PC, Kingston (John T. Casey Jr., Troy, of counsel), for respondent.

Clark, J.P.
Appeal from an amended order of the Supreme Court (Kevin R. Bryant, J.), entered September 27, 2022 in Ulster County, which partially denied a motion by defendants County of Ulster and Ulster County Department of Social Services for summary judgment dismissing the complaint against them.
In May 2017, plaintiff's son and daughter (hereinafter collectively referred to as the children) were removed by defendant Ulster County Department of Social Services (hereinafter DSS) and placed in a foster home, where they were cared for by defendants Shawn Temple and Jennifer Temple. The children remained in foster care through July 2019. On July 28, 2019, as Shawn Temple operated a riding lawnmower at the foster home, a rock propelled by the lawnmower struck the son in the eye. The incident resulted in the son losing use of his right eye.
Plaintiff commenced the instant action in August 2019, asserting claims individually and on behalf of the son, and he served a notice of claim on DSS and on defendant County of Ulster. Then, in June 2020, plaintiff filed an amended complaint alleging, as relevant here, that the County and DSS were negligent because, having prior notice of the dangerous condition that led to the son's injury, they took no action to ameliorate the risk. Following discovery, the County and DSS moved for summary judgment dismissing the complaint against them, and plaintiff opposed. Supreme Court partially granted the motion, finding that DSS could not be sued as a separate entity from the County and dismissing the complaint against DSS. The court otherwise denied the motion, finding that the County failed to make a prima facie showing that it lacked notice of the dangerous condition and highlighting the County's failure to turn over progress notes showing that it documented and investigated various complaints made by plaintiff leading up to the incident. The County appeals.
"Summary judgment is a drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action. The moving party's failure to make a prima facie showing of entitlement to summary judgment requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks, brackets, emphasis and citations omitted]; see CPLR 3212 [b]; accord Davis v Zeh, 200 AD3d 1275, 1278 [3d Dept 2021]). "When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations" (Carpenter v Nigro Cos., Inc., 203 AD3d 1419, 1420-1421 [3d Dept 2022] [internal quotation [*2]marks and citation omitted]; see Vega v Restani Constr. Corp., 18 NY3d at 505; Facteau v Mediquest Corp., 162 AD3d 1386, 1388 [3d Dept 2018]).
A governmental foster care agency is "under a duty to adequately supervise the children in its charge and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (Romero v YMCA of Greater Malone Dev. Group, LLC, 79 AD3d 1344, 1345 [3d Dept 2010] [internal quotation marks, brackets, ellipsis and citation omitted]; see McCabe v Dutchess County, 72 AD3d 145, 151 [2d Dept 2010]; Liang v Rosedale Group Home, 19 AD3d 654, 655 [2d Dept 2005]). In the context of children in foster care, a county "may be sued to recover damages for negligence in the selection of foster parents and in supervision of the foster home" (Keizer v SCO Family of Servs., 120 AD3d 475, 476 [2d Dept 2014]; see La Fountain v County of Clinton, 237 AD2d 808, 809 [3d Dept 1997]). "[I]n order to find that a [foster care agency] has breached its duty to adequately supervise the children entrusted to its care, a plaintiff must establish that the [agency] 'had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts [by the foster parents] could reasonably have been anticipated' " (Liang v Rosedale Group Home, 19 AD3d at 655, quoting Mirand v City of New York, 84 NY2d 44, 49 [1994]; cf. Melfe v Roman Catholic Diocese of Albany, N.Y., 196 AD3d 811, 814 [3d Dept 2021]). "A foster care agency cannot be held liable for injuries which result to a foster child due to the momentary inattention of a foster parent, where the actions of the foster parent were not acts that should have been foreseeable by the agency in the exercise of reasonable care" (McCabe v Dutchess County, 72 AD3d at 151 [internal quotation marks, ellipsis, brackets and citations omitted]; see Moore v City of New York, 85 AD3d 623, 624 [1st Dept 2011], lv denied 17 NY3d 713 [2011]).
On appeal, the County argues that Supreme Court erred in finding that a question of fact existed as to whether the County, through DSS, received prior specific notice of the condition that led to the son's injury. As such, we focus our analysis on whether a question of fact existed regarding the notice element. In support of its motion for summary judgment, the County submitted the General Municipal Law § 50-h testimony of plaintiff and the deposition testimony of plaintiff, the son, former caseworker Nicole Coffey, retired caseworker George Markunas, caseworker supervisor Carly Larkin, DSS deputy commissioner Barbara Sorkin, Shawn Temple and Jennifer Temple. It is uncontroverted that on the afternoon of July 28, 2019, Shawn Temple was mowing the lawn at his home when the son entered a playground located on the Temples' property, approximately 55 feet from the area where Shawn Temple was mowing. The riding lawnmower then propelled a rock, striking the son in the right eye and causing him to suffer [*3]an injury.
Soon after the children entered foster care, Coffey became the caseworker assigned to the case, and she remained so until January 2018, when her employment with DSS ended. Markunas was then assigned to the family, and he remained the assigned caseworker until his retirement in 2020. According to plaintiff, over the course of the children's placement, he made several complaints to Coffey and Markunas about the care the children were receiving in the Temples' home. As relevant here, plaintiff testified that he observed other children sitting on Shawn Temple's lap as he operated the riding lawnmower and that the son had shared with him that he had also ridden the lawnmower. Thereafter, plaintiff complained to Markunas that he did not want the children "on or near" the lawnmower, as he was afraid that they could get hurt.
During her testimony, Coffey asserted that, among various concerns, plaintiff had complained twice about the children riding on the lawnmower during the summer of 2017. Coffey testified that she discussed the first complaint with Larkin, her supervisor, who simply reminded her that foster parents were permitted to take actions with foster children as any reasonable parent would with their own children. Coffey took no further action. After plaintiff shared the same complaint a second time, Coffey took no action.
Markunas testified that plaintiff had made various complaints about the Temples, and that he likely documented some in progress notes. However, Markunas only recalled a complaint about Jennifer Temple lingering during plaintiff's phone calls with the children. Markunas could not recall plaintiff complaining about the use of a riding lawnmower on any occasion but did not deny that it could have happened. He explained that plaintiff sent some of his complaints through text messages to Markunas's work phone, which he no longer had because he returned it to DSS upon his retirement.
Larkin testified that from 2017 through 2019, she was a senior caseworker for DSS and was responsible for supervising Coffey and Markunas, which involved discussing their assigned cases and included addressing parents' complaints. To that end, she recalled that Markunas communicated plaintiff's complaint about Jennifer Temple's involvement during phone calls. Larkin did not recall any of plaintiff's other complaints but asserted that she would have remembered a complaint about the son riding a lawnmower because it would have posed a safety concern. Further, despite testifying that parents' complaints are routinely documented through progress notes, she could not say for certain which of plaintiff's complaints were actually documented. Sorkin, who was deputy commissioner of DSS during the relevant times, denied being aware of any of plaintiff's complaints.
After reviewing the County's submission, we find that it failed to establish its prima facie entitlement to summary judgment. The County argues that, even if plaintiff had complained [*4]about the children being allowed to sit on Shawn Temple's lap as he operated the lawnmower, this notice was insufficient, as the injury occurred while the son was simply standing nearby while Shawn Temple mowed the lawn. However, this position disregards plaintiff's testimony that he complained about the son being "on or near" the riding lawnmower. Further, the testimony by the various DSS employees failed to establish that the notice was insufficient as a matter of law. While Larkin, Markunas and Coffey all admitted that plaintiff made numerous complaints regarding the care the children received in the Temples' home, Markunas and Larkin were only able to recall a complaint about phone calls. Meanwhile, Coffey specifically recalled that plaintiff complained twice about the son sitting on Shawn Temple's lap while he operated the riding lawnmower, and she asserted that she discussed the complaint with Larkin on one occasion. Although Larkin denied any memory of that conversation, this inconsistency is not properly resolved through a summary judgment motion, where "courts must focus on issue finding rather than issue determination" (Smero v City of Saratoga Springs, 160 AD3d 1169, 1170 [3d Dept 2018] [internal quotation marks and citations omitted]).[FN1] Contrary to the County's assertion, the record before us does not permit us to determine the sufficiency of the notice provided to DSS as a matter of law (compare Liang v Rosedale Group Home, 19 AD3d at 655-656). Therefore, Supreme Court properly denied the County's motion for summary judgment (see De'L. A. v City of New York, 158 AD3d 30, 36-37 [1st Dept 2017]; Bartels v County of Westchester, 76 AD2d 517, 523 [2d Dept 1980]; compare Simpson v County of Dutchess, 35 AD3d 712, 713 [2d Dept 2006]).
Further, the County argues that it was not required to turn over progress notes during discovery. As the County correctly notes, plaintiff did not specifically request the progress notes created by DSS. However, plaintiff requested "copies of any and all statements . . . written or otherwise transcribed, of [plaintiff] concerning the issues involved in this action." Considering this request and the requirement that DSS keep notes regarding plaintiff's complaints (see 18 NYCRR 428.5 [c]), we find that Supreme Court correctly found that the County should have turned over any progress notes that were responsive to plaintiff's discovery requests. The County's remaining contentions, to the extent not expressly addressed, have been considered and found to lack merit.
Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the amended order is affirmed, with costs.

Footnotes

Footnote 1: Notably, if the County received sufficient notice of a risk posed by the lawnmower, it also had a duty to act to ameliorate the risk (see De'L. A. v City of New York, 158 AD3d 30, 36-37 [1st Dept 2017]; cf. Melfe v Roman Catholic Diocese of Albany, N.Y., 196 AD3d at 814). Whether any omission by the County constituted the proximate cause of the son's injuries would be a question of fact for the factfinder to determine (see Mirand v City of New York, 84 NY2d 44 at 51).